## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| **SUTTON PLACE 1 TOWNHOUSE C/O** | § | |
| **DANA PROPERTIES**, | § | |
| | § | |
| *Plaintiff*, | § | |
| **v.** | § | |
| | § | **EP-22-CV-00164-DCG** |
| **AMGUARD INSURANCE COMPANY** | § | |
| **D/B/A BERKSHIRE GUARD** | § | |
| **INSURANCE CO.**, | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANT'S MOTION TO DISMISS

Defendant AmGuard Insurance Company[1] moves to dismiss Plaintiff Sutton Place 1

Townhouse's[2] claims as time-barred.[3]  3d Mot. Dismiss, ECF No. 27.  The Court **GRANTS**

Defendant's Motion and **DISMISSES** this case **WITH PREJUDICE**.

## I.      BACKGROUND

### A.      Plaintiff's Factual Allegations

For the purposes of recounting this case's facts, the Court assumes all well-pleaded

allegations in Plaintiff's Second Amended Complaint are true.[4]

---

[1] *d/b/a* Berkshire Guard Insurance Co.

[2] *c/o* Dana Properties.

[3] Defendant also raises other arguments for dismissal, but the Court need not consider those arguments to resolve the Motion in Defendant's favor.  *See* 3d Mot. Dismiss at 6–9.

[4] *See, e.g.*, *McCoy v. Miss. State Tax. Comm'n (In re McCoy)*, 666 F.3d 924, 926 (5th Cir. 2012) ("The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when all well-pleaded facts are assumed true and are viewed in the light most favorable to the plaintiff." (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010))).

Plaintiff owns commercial property in El Paso, Texas (the "Property") that consists of 13 buildings. 2d Am. Compl., ECF No. 25, at 1.[5]  Defendant issued a commercial insurance policy (the "Policy") covering the Property from storm damage.  *Id.* at 2; *see also* Policy, ECF No. 18-1.[6]

Hailstorms and windstorms damaged the Property on May 20, 2019 and August 27, 2019. 2d Am. Compl. at 2.  Thus, on December 6, 2019, Plaintiff submitted a claim under the Policy for the storm damage.  *Id.*

Defendant estimated Plaintiff's losses from the storms to be $85,659.97.  *Id.* at 4, 6. Because that amount was less than the Policy's $130,000 deductible, Defendant denied Plaintiff's claim on January 29, 2020.  *Id.* at 2, 4, 6.

Plaintiff insists that it actually suffered a $1,010,052.98 loss from the storms.  *Id.* at 5; *see also* 2d Am. Compl. Ex. 1, ECF No. 25-1.  Thus, on April 1, 2021, Plaintiff sent Defendant an independent expert report quantifying its claimed losses to attempt to negotiate a settlement on its claim.  2d Am. Compl. at 6.  Defendant never responded to Plaintiff's settlement demand.  *Id.* at 6–7.

**B.     Plaintiff's Claims**

**1.        Breach of Contract**

Plaintiff accuses Defendant of breaching the Policy in two ways.  *See id.* at 4–5.  Plaintiff first claims that Defendant "considerably, intentionally, knowingly, deliberately and grossly

---

[5] Page citations in this Memorandum Opinion and Order refer to the page numbers assigned by the Court's CM/ECF system, not the document's internal pagination.

[6] Although Plaintiff didn't attach the Policy to its Second Amended Complaint, Plaintiff did attach the Policy to an earlier pleading.  *See* 1st Am. Compl., Ex. A, ECF No. 18-1.  The Court may therefore consider the Policy when ruling on Defendant's Motion.  *See, e.g.*, *Bryant v. Gen. Cas. Co. of Wis.*, No. 1:18-CV-562, 2019 WL 367292, at *1 n.1 (N.D.N.Y. Jan. 30, 2019).

underestimated the scope and amount of damages" Plaintiff sustained.  *Id.* at 4.  Plaintiff

therefore asserts that Defendant breached the Policy by failing to pay the full amount of

Plaintiff's losses.  *Id.* at 4–5.

Second, Plaintiff complains that "[a]lthough Defendant received Plaintiff's estimate prior

to litigation, Defendant did not inform Plaintiff that it needed the estimate to be broken down by

each of the 13 buildings to evaluate the claim properly until July 22, 2022, when Defendant

filed" its first of several motions to dismiss Plaintiff's claims.  *Id.* at 5.[7]  According to Plaintiff,

by waiting for "a year and three months" to "inform[] Plaintiff that a revised estimate was

necessary for Defendant to determine the available limits and deductibles under the Policy and

properly process the claim," Defendant breached the Policy a second time.  *Id.*

### 2.      Texas Insurance Code

Plaintiff also claims that Defendant violated Texas Insurance Code § 541.060(a)(2)(A),

*id.* at 5–7, which makes it "an unfair method of competition or an unfair or deceptive act or

practice in the business of insurance to . . . fail[] to attempt in good faith to effectuate a prompt,

fair, and equitable settlement of . . . a claim with respect to which the insurer's liability has

become reasonably clear," TEX. INS. CODE § 541.060(a).  In Plaintiff's view, because Defendant

"prepared its own estimate" of Plaintiff's losses and "accepted liability for the damages listed on

its estimate," Defendant's liability under the Policy "was not only 'reasonably clear[,]' but

perfectly clear."  2d Am. Compl. at 6.  Plaintiff contends that it sought "a prompt, fair and

equitable settlement from Defendant" when it provided Defendant its "independent expert report

in the amount of $1,010,052.98" on April 1, 2021.  *Id.*  According to Plaintiff, because

---

[7] *See also* 1st Mot. Dismiss, ECF No. 11, at 3 ("The Policy at issue here included multiple properties . . . [Defendant] cannot tell from the Complaint which properties are at issue, which claims, or which decisions on which claims.  The Plaintiff's failure to plead with sufficient specificity such that [sic] [Defendant] cannot frame a responsive pleading.").

Defendant waited until it filed its First Motion to Dismiss on July 22, 2022 to inform Plaintiff

"that it needed the estimate to be broken down by each of the 13 buildings on the Property,"

Defendant did "not attempt[] in good faith to effectuate a prompt, fair, and equitable settlement

of" Plaintiff's claims.  *Id.*[8]

## C.    Procedural Posture

To serve a defendant with process under Texas law, the plaintiff must ordinarily serve the

defendant with both

    (1)    the petition (which is Texas's equivalent to a complaint);[9] and

    (2)    a citation (which is Texas's equivalent to a summons).[10]

TEX. R. CIV. P. 106.[11]  So, to validly serve process in a Texas state court, the plaintiff must

generally ask the clerk of that court to issue a citation first.[12]  "[I]t is not until the party requests

that the citation be issued . . . that the clerk has the duty of issuing and delivering that citation."

*Green v. Kaposta*, No. 05-00-00220-CV, 2001 WL 878106, at *3 (Tex. App.–Dallas Aug. 6,

2001).

---

[8] *See also supra* note 7.

[9] *E.g.*, *Rocha v. Balfour Beatty Mil. Hous. Mgmt., LLC*, No. 3:16-CV-358, 2016 WL 11546852, at *4 (W.D. Tex. Oct. 7, 2016).

[10] *E.g.*, *Myers v. Frontier PMS*, No. 4:21-cv-436, 2021 WL 6274566, at *1 n.2 (E.D. Tex. Nov. 29, 2021), *report and recommendation adopted by* 2022 WL 36532 (E.D. Tex. Jan. 3, 2022).

[11] *See also, e.g.*, *In re T.M.E.*, 565 S.W.3d 383, 391 n.7 (Tex. App.–Texarkana 2018) ("In Texas, service of process requires service of both the citation and a copy of the plaintiff's petition on the defendant.").

[12] *See* TEX. R. CIV. P. 99(a) ("Upon the filing of the petition, the clerk, when requested, shall forthwith issue a citation and deliver the citation as directed by the requesting party."); *see also, e.g.*, *Risley v. Alvarez*, No. 14-10-00015-CV, 2011 WL 397948, at *4 (Tex. App.–Houston [14th Dist.] Feb. 8, 2011) ("In Texas, a party bringing suit must request the clerk of court to issue citation and arrange for service of citation and petition (or waiver thereof) on the defendants in the lawsuit.").

Plaintiff initially filed this lawsuit in a Texas state court on November 2, 2021.  Original Pet., ECF No. 1-4, at 1.  However, Plaintiff didn't ask the clerk of that court to issue a citation and deliver it to Defendant until April 1, 2022—nearly five months later.  *See* Docket, ECF No. 1-2.[13]  The clerk duly issued and mailed the citation on April 6, 2022, and service of process became effective on April 11, 2022.  *See id.*; Citation, ECF No. 1-3.

Invoking the federal courts' diversity jurisdiction, Defendant removed Plaintiff's lawsuit on May 6, 2022.  Notice Removal, ECF No. 1.[14]  Defendant then filed its first of several motions to dismiss the case under Federal Rule of Civil Procedure 12(b)(6).  *See* 1st Mot. Dismiss.  Although the Court granted Defendant's motion in relevant part,[15] the Court gave Plaintiff an opportunity to amend its complaint to fix the pleading defects the Court identified.  *See generally* 1st Dismissal Order, ECF No. 15.

After Plaintiff amended its pleadings, 1st Am. Compl., ECF No. 18, Defendant again moved to dismiss the case under Rule 12(b)(6), 2d Mot. Dismiss, ECF No. 20.  Before the Court could rule on Defendant's Second Motion to Dismiss, however,[16] Plaintiff amended its pleadings

---

[13] *See also* TEX. R. CIV. P. 103 ("Service by registered or certified mail . . . must, if requested, be made by the clerk of the court in which the case is pending.").

[14] *See also* 28 U.S.C. § 1332(a) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States.").  Plaintiff does not dispute—and the Court finds— that the Court may permissibly exercise diversity jurisdiction over this case.  *See* Notice Removal at 2.

[15] Defendant also moved for a more definite statement under Federal Rule of Civil Procedure 12(e).  *See generally* 1st Mot. Dismiss.  The Court denied the motion to that extent.  1st Dismissal Order, ECF No. 15, at 1 n.1.

[16] The Court initially granted Defendant's Second Motion to Dismiss as unopposed after Plaintiff failed to respond by the applicable deadline.  2d Dismissal Order, ECF No. 21.  The Court vacated that dismissal order when Plaintiff moved for reconsideration.  Order Granting Mot. Alter Amend J., ECF No. 24.

a second time, *see* 2d Am. Compl., rendering the Second Motion to Dismiss moot, *see* Order

Denying 2d Mot. Dismiss, ECF No. 28.

## II.   DISCUSSION

Defendant now moves for the third time to dismiss Plaintiff's claims under Rule 12(b)(6).

*See generally* 3d Mot. Dismiss.  Defendant contends that Plaintiff didn't exercise due diligence

when serving it with process, and that the statute of limitations therefore bars Plaintiff's claims.

*See id.* at 2–6.  For the following reasons, the Court agrees.

## A.   Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a complaint for

"failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  "[T]o

survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true,

to state a claim for relief that is plausible on its face."  *E.g.*, *George v. SI Grp., Inc.*, 36 F.4th 611,

619 (5th Cir. 2022) (cleaned up).  The complaint's "well-pleaded factual allegations . . . must be

taken as true and viewed in the light most favorable to the plaintiff."  *E.g.*, *id.*

"In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss,

the factual information to which the court addresses its inquiry" is generally limited to:

(1)   "the facts set forth in the complaint;"

(2)   "documents attached to the complaint;"[17] and

(3)   "matters of which judicial notice may be taken under Federal Rule of
      Evidence 201."[18]

---

[17] *But see supra* note 6.

[18] In rare instances, a court may also consider documents the defendant attaches to its motion to dismiss.  *See, e.g.*, *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).  Defendant didn't attach any documents to its Motion (other than a Proposed Order), so the Court won't discuss that exception.

*Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

"[T]he statute of limitations . . . is usually pled as an affirmative defense," *Thompson v. Deutsche Bank Nat'l Tr. Co.*, 775 F.3d 298, 302 (5th Cir. 2014), and "defenses are generally not the proper subject of Rule 12(b)(6) motions," *Songbyrd, Inc. v. Bearsville Records, Inc.*, 104 F.3d 773, 775 n.3 (5th Cir. 1997). Nonetheless, "a statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *E.g.*, *Thompson*, 775 F.3d at 302 (cleaned up). Besides considering the plaintiff's pleadings when assessing whether a plaintiff's claims are time-barred, the court may also consider documents subject to judicial notice, such as court records. *See, e.g.*, *O'Boyle v. Braverman*, 337 F. App'x 162, 164–65 (3d Cir. 2009); *Flanagan v. Fed. Sav. & Loan Ins. Corp.*, 81 F.3d 168, 1996 WL 157508, at *4–5 (9th Cir. 1996).

## B. Plaintiff Didn't Exercise Due Diligence in Serving Defendant, so the Statute of Limitations Bars Plaintiff's Claims

### 1. Texas's Due Diligence Requirement

To comply with a statute of limitations under Texas law, it's not enough to *file* a lawsuit before the limitations period expires. *See, e.g.*, *Gant v. DeLeon*, 786 S.W.2d 259, 260 (Tex. 1990). The plaintiff must also either

(1) *serve* the defendant with process *before* the limitations period expires; or

(2) exercise *due diligence* in serving the defendant *after* the limitations period expires.

*See, e.g.*, *id*. So long as "service is diligently effected after limitations has expired, the date of service will relate back to the date of filing" and the suit will be timely. *E.g.*, *Proulx v. Wells*, 235 S.W.3d 213, 215 (Tex. 2007). If the plaintiff doesn't exercise due diligence, however, the

statute of limitations bars the suit.  *See, e.g.*, *Webster v. Thomas*, 5 S.W.3d 287, 291–92 (Tex. App.–Houston [14th Dist.] 1999).

"[O]nce the defendant demonstrates that service occurred after the limitations deadline, the burden shifts to the plaintiff to explain the delay."  *Proulx*, 235 S.W.3d at 215 (cleaned up). To meet that burden, the plaintiff must show that she "acted as an ordinarily prudent person would have acted under the same or similar circumstances" and was "diligent up until the time the defendant was served."  *Ashley v. Hawkins*, 293 S.W.3d 175, 179 (Tex. 2009).  "Texas courts have consistently held that unexplained delays of five and six months in procuring issuance and service of citation constitute a lack of due diligence as a matter of law."  *Waggoner v. Sims*, 401 S.W.3d 402, 406 (Tex. App.–Texarkana 2013); *see also, e.g.*, *S. Cnty. Mut. Ins. Co. v. Ochoa*, 19 S.W.3d 452, 462 (Tex. App.–Corpus Christi 2000) (collecting cases).

Because this case arises under the Court's diversity jurisdiction, and all of Plaintiff's claims arise under Texas law, Texas's due diligence rule governs whether Plaintiff's suit is timely.  *See, e.g.*, *Saenz v. Keller Indus. of Tex., Inc.*, 951 F.2d 665, 667 (5th Cir. 1992); *Rodriguez v. Safeco Ins. Co. of Ind.*, No. 18-CV-00851, 2019 WL 650437, at *2–4 (W.D. Tex. Jan. 7, 2019) (applying Texas's due diligence requirement in federal lawsuit asserting breach of contract and Texas Insurance Code claims against insurer, as Plaintiff does here).

## 2. The Court May Adjudicate Defendant's Due Diligence Defense in a Rule 12(b)(6) Posture

Plaintiff insists that the Court can't consider Defendant's due diligence defense in a Rule 12(b)(6) posture.  Resp., ECF No. 29, at 2–3.  Plaintiff stresses that a Court's inquiry when deciding a Rule 12(b)(6) motion is generally limited to the pleadings.  *Id.*  As Plaintiff correctly notes, "Plaintiff's Second Amended Complaint has not factually admitted nor argued any elements regarding due diligence in service after the expiration of the statute of limitations."  *Id.*

at 3; *see also* 2d Am. Compl.  Thus, Plaintiff contends, if Defendant believes it has a meritorious

due diligence defense, it must either "seek a summary judgment or prove it at trial," rather than

seek dismissal under Rule 12(b)(6).  Resp. at 2.

"The determination of due diligence is usually a fact question."[19]  Plaintiff is therefore

correct that federal and state courts commonly adjudicate due diligence defenses in a summary

judgment posture or at trial, after the parties have conducted discovery and introduced competing

evidence bearing on the plaintiff's diligence.[20]  To that end, several federal courts have converted

Rule 12(b)(6) motions asserting due diligence defenses to summary judgment motions when the

parties attached extrinsic evidence to their filings pertaining to the plaintiff's service efforts.[21]

---

[19] *Saenz*, 951 F.2d at 667; *see also, e.g.*, *Ashley*, 293 S.W.3d at 177, 179 (similar).

[20] *See* Resp. at 2; *see also, e.g.*, *Ashley*, 293 S.W.3d at 177, 179–82 (summary judgment); *Saenz*, 951 F.2d at 666–68 (summary judgment); *Plantation Prod. Props., L.L.C. v. Meeks*, No. 10-02-00029-CV, 2004 WL 2005445, at *1, *5–7 (Tex. App.–Waco Sept. 8, 2004) (trial).

[21] *See, e.g.*, *Grant v. C.R. England, Inc.*, No. 10-30649, 2011 WL 11203, at *3 (S.D. Tex. Jan. 3, 2011) ("Both parties have introduced material to their motions and responses, including the explanation of the delay in service, copies of the waiver form and evidence of Grant's efforts to locate it. . . . The court will convert the motion to dismiss on the statute of limitations issue to one for summary judgment. The parties may file . . . additional argument and materials . . . ."); Order Converting Motion to Dismiss to Motion for Summary Judgment at 3, *Bitsui v. Doubletree by Hilton Hotel El Paso Downtown*, No. 3:22-cv-00302-DB (W.D. Tex. Nov. 7, 2022), ECF No. 25 ("In their motion and reply, Defendants point to facts outside the pleadings to illustrate the timeline of Plaintiff's service efforts.  Similarly, in her response, Plaintiff recounts her service efforts, which were not detailed in her original state court petition. Plaintiff also attaches extraneous materials to her response, including email communications between herself and opposing counsel.  While it is necessary for the Court to consider these extraneous materials to rule on the motion, the Court cannot consider them when ruling on a Rule 12(b)(6) motion.  Thus, this order serves as notice to the parties that the Court will convert the 12(b)(6) motion to a motion for summary judgment." (internal citations omitted)).

*See also* FED. R. CIV. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.").

Nevertheless, a "lack of due diligence may be found as a matter of law if the plaintiff offers no excuse for his failure to procure service, or if the plaintiff's excuse conclusively negates diligence."[22]  Federal courts throughout Texas have therefore dismissed cases on due diligence grounds under Rule 12(b)(6)—without converting the defendant's motion to dismiss to a summary judgment motion—where

    (1)    in the plaintiff's response to the defendant's motion to dismiss, the plaintiff offered no excuse—or excuses that were invalid as a matter of law—for her delay in service;

    (2)    documents subject to judicial notice (such as court dockets) evinced that the plaintiff failed to exercise due diligence to serve the defendant after the limitations period expired; and

    (3)    neither party attached extrinsic evidence bearing on the plaintiff's service efforts to its motion or response.[23]

---

[22] *Saenz*, 951 F.2d at 667; *see also, e.g.*, *Ashley*, 293 S.W.3d at 177, 179 (similar).

[23] *See, e.g.*, *Scott v. Cypress Creek Emergency Med. Servs.*, No. 06-1436, 2007 WL 2209268, at *5–6 (S.D. Tex. July 27, 2007) ("Plaintiffs' attempts to justify late service fail to adequately account for the six and a half months since the running of the statute of limitations, thus conclusively establishing a lack of due diligence as a matter of law.  Accordingly, the date of service does not relate back to the filing date, and, thus, Plaintiffs' state law claims are barred by the state statute of limitations *and properly dismissed under Rule 12(b)(6)*." (emphasis added) (internal citations omitted)); *see also id.* at *5 (mentioning the standard for converting Rule 12(b)(6) motions to motions for summary judgment, but ultimately declining to do so); *Barco v. Alpine Silica, LLC*, No. 6:21-CV-01274, 2023 WL 2541980, at *1, *3 (W.D. Tex. Feb. 2, 2023), *report and recommendation adopted by* 2023 WL 2544342 (W.D. Tex. Mar. 15, 2023) ("Barco failed to provide an explanation as to why summons was not effected within a reasonable amount of time and Alpine's Motion to Dismiss [under Rule 12(b)(6)] should be granted."); *Razmzan v. Wal-Mart Stores, Inc.*, No. 4:16CV771, 2017 WL 1654074, at *2 (E.D. Tex. Mar. 5, 2017), *report and recommendation adopted by* 2017 WL 1551614 (E.D. Tex. May 1, 2017) (dismissing case under Rule 12(b)(6) where "the record establishe[d] that [the p]laintiff made no effort to serve [the defendant] until eighteen months after the complaint was filed" and did not "furnish a reason for the delay"); *Vela v. City of Austin*, No. 1:15-CV-1015, 2016 WL 1583676, at *1–2, *4 (W.D. Tex. Apr. 19, 2016) (dismissing claims under Rule 12(b)(6) on due diligence grounds where plaintiff "only briefly addresse[d] the issue of due diligence in responding to the [defendants'] motion to dismiss").

As the Court explains in greater detail below, the state court's pre-removal docket in this case—which is a proper subject for judicial notice—reflects that

    (1)    Plaintiff didn't serve Defendant until after the applicable limitations periods expired; and

    (2)    Plaintiff waited several months after filing suit to ask the clerk to issue a citation and deliver it to Defendant.

*See infra* Section II.B.5-6.  Plaintiff offered no excuse for that delay in its Response to Defendant's Motion.  *See* Resp. at 2–4.  Defendant hasn't attached any exhibits to its Motion except for a proposed order, and the only exhibit Plaintiff attached to its Response doesn't bear on Plaintiff's diligence in effecting service.  *See* Resp. Ex. 1, ECF No. 29-1.  Thus, the Court need not refer to any documents other than the pleadings and matters subject to judicial notice to evaluate whether Defendant's due diligence defense has merit.  The Court can therefore decide that issue in a Rule 12(b)(6) posture without converting the Motion to one for summary judgment.

### 3.    Defendant Didn't Waive its Due Diligence Defense

Invoking Federal Rule of Civil Procedure 12(g)(2), Plaintiff also contends that Defendant waived its due diligence defense by failing to assert it in either of its two previous motions to dismiss.  *See* Resp. at 3–4.[24]

Subject to several exceptions, Rule 12(g)(2) prohibits a defendant who files a motion to dismiss under Rule 12(b) from "mak[ing] another motion under" Rule 12(b) "raising a defense or objection that was available to the party but omitted from its earlier motion."  FED. R. CIV. P. 12(g)(2).  For instance, if a defendant doesn't assert an available "lack of personal jurisdiction," "improper venue," "insufficient process," or "insufficient service of process" defense in its initial

---

[24] *See also* 1st Mot. Dismiss; 2d Mot. Dismiss.

motion to dismiss, it can't do so in a subsequent motion to dismiss.[25]  The Rule thereby "encourage[s] the consolidation of motions and discourage[s] the dilatory device of making them in a series."  *Flory v. United States*, 79 F.3d 24, 25 (5th Cir. 1996).

Critically, however, Rule 12(g)(2)'s consolidation requirement *doesn't* apply to the defense that a complaint fails to state a claim upon which relief can be granted under Rule 12(b)(6).  *See, e.g.*, *Doe v. Columbia-Brazoria Indep. Sch. Dist. ex rel. Bd. Trs.*, 855 F.3d 681, 686 (5th Cir. 2017) ("Rule 12(g) does not require consolidation of defenses raised in a subsequent Rule 12(b)(6) motion.").[26]  As discussed above, the statute of limitations is a defense that a defendant may potentially assert in a Rule 12(b)(6) motion to dismiss for failure to state a claim.  *See supra* Section II.A.  Thus, a defendant's failure to raise a statute of limitations

---

[25] *See* FED. R. CIV. P. 12(h)(1) ("A party waives any defense listed in Rule 12(b)(2)–(5) by . . . omitting it from a motion in the circumstances described in Rule 12(g)(2)."); FED. R. CIV. P. 12(b)(2) (lack of personal jurisdiction); FED. R. CIV. P. 12(b)(3) (improper venue); FED. R. CIV. P. 12(b)(4) (insufficient process); FED. R. CIV. P. 12(b)(5) (insufficient service of process).

[26] *See also* FED. R. CIV. P. 12(g)(2) ("*Except as provided in Rule 12(h)(2)* or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." (emphasis added)); FED. R. CIV. P. 12(h)(2) ("Failure to state a claim upon which relief can be granted . . . may be raised: (A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or (C) at trial.").

Although Rule 12(h)(2)(B) refers to "a motion under Rule 12*(c)*" and not a motion to dismiss under Rule 12(b)(6), *see* FED. R. CIV. P. 12(h)(2) (emphasis added), the Fifth Circuit has interpreted the Rule to allow defendants to raise new defenses in subsequent Rule 12(b)(6) motions as well.  *See Doe*, 855 F.3d at 686 ("Doe . . . claims that the district court abused its discretion by permitting the District to file a second Rule 12(b)(6) motion after the original motion was denied . . . . Rule 12(g) does not require consolidation of defenses raised in a second Rule 12(b)(6) motion . . . . Rule 12(h)(2) allows the filing of a second motion . . . . [E]ven if Rule 12(h)(2) should not be interpreted this way, there was no harm in allowing the second motion.  The District may have raised new arguments in its second motion by adding information about the special-relationship and state-created-danger exceptions to Section 1983 liability. If so, the District could have presented that same argument in a Rule 12(c) motion for judgment on the pleadings, which Rule 12(h) does not prohibit.  The district court did not abuse its discretion in considering the District's second Rule 12(b)(6) motion." (internal citations omitted)).

defense in its initial motion to dismiss doesn't bar that defendant from asserting it in a later motion to dismiss.[27]

Applying that principle here, Defendant didn't waive its due diligence defense by failing to raise it in its two previous motions to dismiss.  To render its claim timely under Texas law, a plaintiff who serves a defendant after the limitations period expires must satisfy the due diligence requirement.  *See, e.g.*, *Webster*, 5 S.W.3d at 291–92.  Federal courts have therefore generally agreed that due diligence is a statute of limitations defense that a defendant may assert in a Rule 12(b)(6) posture.[28]  Because Rule 12(g)(2)'s consolidation requirement doesn't apply to Rule 12(b)(6) defenses, *see, e.g.*, *Doe*, 855 F.3d at 686, a defendant doesn't waive a due diligence defense by failing to raise it in its initial motion to dismiss.

The Court acknowledges that, under Rules 12(g)(2) and 12(h)(1), a defendant waives an "insufficient process" defense under Rule 12(b)(4) or an "insufficient service of process" defense under Rule 12(b)(5) if it fails to raise it in its initial motion to dismiss.[29]  The Court also recognizes that, in at least two cases that do not bind this Court[30]—namely, *Henderson v.*

---

[27] *See, e.g.*, *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 141 (5th Cir. 2007) ("Nationwide argues that Belo failed to consolidate its personal jurisdiction and statute of limitations defenses in the same Rule 12(b) motion.  However, Rule 12(g) did not require consolidation here because Rule 12(h)(2) explicitly excepts from the consolidation requirement motions based on the defense of failure to state a claim upon which relief can be granted."); *Azadpour v. Blue Sky Sports Ctr. of Keller*, No. 3:17-CV-1335, 2018 WL 4189709 (N.D. Tex. Aug. 14, 2018), *report and recommendation adopted by* 2018 WL 4184909, at *4 (N.D. Tex. Aug. 31, 2018) ("Defendants did not waive their statute of limitations defense by failing to raise it in the briefing on their first motion to dismiss. . . . Rule 12(h)(2) specifically exempts motions to dismiss for failure to state a claim from the consolidation requirement of Rule 12(g), therefore preserving the Trautman's statute of limitations defense from waiver.").

[28] *See supra* note 23 and accompanying text.

[29] *See* FED. R. CIV. P. 12(h)(1) ("A party waives any defense listed in Rule 12(b)(2)–(5) by . . . omitting it from a motion in the circumstances described in Rule 12(g)(2)."); FED. R. CIV. P. 12(b)(4) (insufficient process); FED. R. CIV. P. 12(b)(5) (insufficient service of process).

[30] *See* 5TH CIR. R. 47.5.4 (providing, with exceptions not relevant here, that "[u]npublished [Fifth Circuit] opinions issued on or after January 1, 1996, are not precedent"); *Camreta v. Greene*, 563 U.S.

*Republic of Texas Biker Rally, Inc.*, 672 F. App'x 383, 384–86 (5th Cir. 2016) and *Mayfield v.*

*Chevron U.S.A., Inc.*, No. 6:18-CV-510, 2019 WL 125877, at *3–4 (E.D. Tex. Jan. 7, 2019)—

federal judges have analyzed due diligence defenses under Rule 12(b)(4) and/or (5) instead of

Rule 12(b)(6).  In neither of those cases, however, did the court explicitly analyze why it applied

subsections (4) and/or (5) instead of (6).  *See Henderson*, 672 F. App'x at 384–86; *Mayfield*,

2019 WL 125877, at *3–4.  The Court must therefore consider whether a plaintiff's failure to

exercise due diligence to serve a defendant after the limitations period expires constitutes

"insufficient process" or "insufficient service of process" under Rule 12(b)(4)–(5)—and, by

extension, whether Defendant waived that defense by failing to raise it earlier.

　　The Court concludes that a plaintiff's failure to satisfy the due diligence requirement

doesn't constitute "insufficient process" under Rule 12(b)(4).  "An objection under Rule 12(b)(4)

concerns the *form* of the process rather than the *manner or method* of its service."  *Gartin v. Par*

*Pharm. Cos.*, 289 F. App'x 688, 691 n.3 (5th Cir. 2008) (cleaned up) (emphasis added).  A Rule

12(b)(4) motion thus challenges whether the summons—or, where service was accomplished

before removal, the citation—is invalid under the applicable Rules of Civil Procedure.  *See*

*Bowman v. Sanofi-Aventis U.S.*, No. 09-CA-192, 2009 WL 5083431, at *1 (W.D. Tex. Apr. 16,

2009).[31]  For instance, "process may be insufficient" under Rule 12(b)(4) "if the summons and

complaint refer to a party in the wrong name."  *Id.*

---

692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in . . . a
different judicial district . . . ." (quoting 18 J. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 134.02[1]
[d] (3d ed. 2011))).

　　[31] *Cf. Velasquez v. Singh*, No. 16-CV-00063, 2017 WL 10181040, at *1 (W.D. Tex. Sept. 25,
2017) ("[A] Rule 12(b)(4) motion is proper only to challenge noncompliance with the provisions of Rule
4(b) or any applicable provision incorporated by Rule 4(b) that deals specifically with the content of the
summons." (citation omitted)).

Defendant doesn't argue that the citation Plaintiff served was defective in any way; Defendant instead argues that Plaintiff took too long to obtain and serve that citation. *See* 3d Mot. Dismiss at 1–6.  Thus, Defendant's due diligence defense isn't an "insufficient process" defense under Rule 12(b)(4) that Defendant waived by failing to raise it earlier. *See Velasquez*, 2017 WL 10181040, at *1–3 (analyzing defendant's due diligence challenge under Rule 12(b)(6) instead of Rule 12(b)(4)).

Nor is Defendant's due diligence challenge an "insufficient service of process" defense under Rule 12(b)(5).  "A Rule 12(b)(5) motion challenges the mode of delivery or the lack of delivery of the summons and complaint." *Gartin*, 289 F. App'x at 691 n.3 (cleaned up). Defendant isn't arguing that Plaintiff never served it with the petition and citation; nor is Defendant arguing that the method by which Plaintiff delivered the petition and citation to Defendant rendered service ineffective. *See* 3d Mot. Dismiss at 1–6.  Instead, Defendant is arguing that Plaintiff's suit is time-barred, *see id.*, which goes to whether Plaintiff has stated a valid claim under Texas law for Rule 12(b)(6) purposes.[32]  Thus, Defendant's due diligence defense isn't an "insufficient service of process" defense under Rule 12(b)(5) that Defendant waived by failing to assert it in its earlier motions either. *See Velasquez*, 2017 WL 10181040, at *2–3 (analyzing defendant's due diligence challenge under Rule 12(b)(6) instead of Rule 12(b)(5)).

The Court thus adopts the majority position that a due diligence defense is one a court should analyze under Rule 12(b)(6), not Rule 12(b)(4) or (5).[33]  Because a defendant doesn't

---

[32] *See supra* Section II.A; *see also supra* note 23 and accompanying text.

[33] *See supra* note 23 and accompanying text.

waive a Rule 12(b)(6) defense by failing to raise it in its initial motion to dismiss, Defendant didn't waive its due diligence defense here.

### 4.    The Applicable Limitations Periods

The Court thus proceeds to consider whether Plaintiff served Defendant after the relevant statutes of limitations expired and thereby triggered the due diligence requirement.  To do so, the Court must first determine what the applicable limitations periods are.

### a.    Breach of Contract

Plaintiff's first cause of action is a breach of contract claim.  *See supra* Section I.B.1. Ordinarily, the limitations period for breach of contract actions under Texas law is four years.[34] However, Texas law allows parties to an agreement to specify in their contract "a different period of time in which a party may file a breach of contract action" so long as that period isn't shorter than two years.  *E.g.*, *Spicewood Summit Office Condos. Ass'n, Inc. v. Am. First Lloyd's Ins. Co.*, 287 S.W.3d 461, 464–65 (Tex. App.–Austin 2009).[35]

Plaintiff and Defendant did so here.  With an exception discussed below, the Policy states that "no one may bring a legal action" under the Policy unless it "is brought within two years and one day from the date the cause of action first accrues."  Policy at 35.  The Policy further specifies that "[a] cause of action accrues on the date of the initial breach of [Defendant's] contractual duties as alleged in the action."  *Id.*

---

[34] *See* TEX. CIV. PRAC. & REM. CODE § 16.004(a) (stating that "[a] person must bring suit on" an action for "debt" "not later than four years after the day the cause of action accrues"); *see also, e.g.*, *Perez v. Gulley*, 829 S.W.2d 388, 390 (Tex. App.–Corpus Christi 1992) ("The section 16.004(a)(3) limitations period on an action for debt also includes all suits brought to recover money for breach of contract.").

[35] *See also* TEX. CIV. PRAC. & REM. CODE § 16.070(a) (providing, with an exception not relevant here, that "a person may not enter a . . . contract . . . that purports to limit the time in which to bring suit on the . . . contract . . . to a period shorter than two years").

"With respect to loss or damage in the state of Texas caused by windstorm or hail in the catastrophe area as defined by the Texas Insurance Code," however, the limitations period expires either:

> (a)   "Two years and one day from the date [Defendant] accept[s] or reject[s] the claim; or
>
> (b)   "Three years and one day from the date of the loss or damage that is the subject of the claim,"

whichever is earlier.  *Id.* at 36.

Defendant observes that Plaintiff's breach of contract claim is based on "a January 29, 2020, decision by" Defendant—namely, its decision to value Plaintiff's losses at $85,659.97 and thereby deny coverage.  *Compare* 3d Mot. Dismiss at 5, *with* 2d Am. Compl. at 2, 4, 6. Defendant therefore maintains that the statute of limitations on Plaintiff's breach of contract claim "ran on January 30, 2022, which is two years and one day after" January 29, 2020.  3d Mot. Dismiss at 6.  Plaintiff doesn't dispute that the limitations period ran from January 29, 2020 to January 30, 2022, *see* Resp. at 2–4, but the Court will independently evaluate whether that's correct.

To do so, the Court must first decide whether the Policy's special limitations provision for windstorm and hail claims governs instead of the default limitations provision.  Again, the former provision applies to claims arising from "loss or damage in the state of Texas caused by windstorm or hail *in the catastrophe area* as defined by the Texas Insurance Code."  Policy at 36 (emphasis added).  Texas Insurance Code § 2210.003(3) defines "catastrophe area" as "a municipality, a part of a municipality, a county, or a part of a county" that the Texas Commissioner of Insurance has designated as a "catastrophe area" under Texas Insurance Code

- 17 -

§ 2210.005.  Tᴇx. Iɴs. Cᴏᴅᴇ § 2210.003(3).  Section 2210.005 in turn authorizes the

Commissioner to

> designate an area *of the seacoast territory of [Texas]* as a catastrophe area if [he or she] determines . . . that windstorm and hail insurance is not reasonably available to a substantial number of the owners of insurable property located in that territory because the territory is subject to unusually frequent and severe damage resulting from windstorms or hailstorms.

*Id.* § 2210.005(a) (emphasis added).

The Court takes judicial notice that El Paso isn't part of "the seacoast territory of" Texas,

and that the Commissioner hasn't designated El Paso as a catastrophe area.[36]  Thus, the Policy's

special limitations provision for windstorm and hail claims doesn't apply.  *See* Policy at 36.

Instead, the Policy's default limitations provision governs, and the limitations period thus ran

from "the date of the initial breach of" Defendant's contractual duties to the date "two years and

one day from" the alleged breach.  *Id.* at 35.

Plaintiff alleges that Defendant first breached the Policy on January 29, 2020.  2d Am.

Compl. at 4.  Defendant is therefore correct that the statute of limitations on Plaintiff's breach of

contract claim expired two years and a day later—*i.e.*, on January 30, 2022.[37]  *See* Policy at 35.

---

[36] Texas Department of Insurance, Designated Catastrophe Areas, https://www.tdi.texas.gov/wind/maps/index.html (last visited Apr. 6, 2023).

[37] Because the limitations period begins "on the date of the *initial* breach of [Defendant's] contractual duties," Policy at 35 (emphasis added), the fact that Defendant allegedly committed additional, subsequent breaches of the Policy doesn't affect the limitations period's start date, *see* 2d Am. Compl. at 5.

### b.    Texas Insurance Code

Plaintiff's second claim is that Defendant violated § 541.060(a)(2)(A) of the Texas

Insurance Code. *See supra* Section I.B.2.  With various exceptions—none of which applies

here[38]—a plaintiff asserting a claim under Chapter 541 of the Texas Insurance Code must file

suit within two years of "the date the unfair method of competition or unfair or deceptive act or

practice occurred."  TEX. INS. CODE § 541.162(a).

According to Defendant, the limitations period began on January 29, 2020—the date

Defendant denied Plaintiff's claim—and therefore ended on January 29, 2022.  *Compare* 3d Mot.

Dismiss at 6, *with* 2d Am. Compl. at 6.[39]  Plaintiff doesn't dispute that the statute of limitations

on its Texas Insurance Code claim ran from January 29, 2020 to January 29, 2022, *see* Resp. at

2–4, but the Court will again independently assess whether that's correct.

---

[38] Section 541.162(b) of the Texas Insurance Code provides that

> [t]he limitations period . . . may be extended for 180 days if the person bringing the action proves that the person's failure to bring the action within that period was caused by the defendant's engaging in conduct solely calculated to induce the person to refrain from or postpone bringing the action.

TEX. INS. CODE § 541.162(b).  Plaintiff doesn't argue that § 541.162(b)'s extension provision applies. *See generally* Resp.; 2d Am. Compl.

Additionally, Texas Insurance Code § 541.162(a)(2) establishes a "discovery rule" that extends the limitations period when the plaintiff has suffered an "inherently undiscoverable" injury—*i.e.*, an injury that "is unlikely to be discovered within the prescribed limitations period despite due diligence." *E.g.*, *Silva v. Wells Fargo Bank, N.A.*, No. 1:12-CV-180, 2014 WL 12586396, at *7 (S.D. Tex. Mar. 17, 2014) (cleaned up).  In such instances, the two-year limitations period instead runs from "the date the person discovered or, by the exercise of reasonable diligence, should have discovered that the unfair method of competition or unfair or deceptive act or practice occurred."  TEX. INS. CODE § 541.162(a)(2). Plaintiff doesn't argue that the discovery rule applies here either.  *See generally* Resp.; 2d Am. Compl.

[39] *See also* 2d Am. Compl. at 6 ("Specifically, on January 29, 2020, although all 13 buildings on the Property were extensively damaged, Defendant provided an intentionally, knowingly, deliberately and grossly underestimated estimate, in the amount of $85,659.97, that did not cover the scope and amount of damages sustained on all 13 buildings and Defendant then denied payment by misrepresenting that the damages were less than the Plaintiff's alleged $130,000 deductible.").

It is.  "A plaintiff's cause of action under the Texas Insurance Code for unfair claims settlement practices" ordinarily "accrues on the date that the insurer denies coverage."  *Smith v. Travelers Cas. Ins. Co. of Am.*, 932 F.3d 302, 313 (5th Cir. 2019) (quoting *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003)).  That occurred on January 29, 2020, when Defendant allegedly "denied payment by misrepresenting that [Plaintiff's] damages were less than [its] alleged $130,000 deductible."  2d Am. Compl. at 6.  Thus, the limitations period on Plaintiff's Texas Insurance Code claim ran from January 29, 2020 to January 29, 2022.

**5.       Plaintiff Served Defendant After the Limitations Periods Expired**

The Court must next determine whether Plaintiff served Defendant after those limitations periods expired.  As noted, when deciding a Rule 12(b)(6) motion, a court may consider "matters of which judicial notice may be taken" in addition to the facts in the complaint.  *Walker*, 938 F.3d at 735.  As relevant here, a federal court may take judicial notice of a state court's docket.  *E.g.*, *Miller v. Dunn*, 35 F.4th 1007, 1013 (5th Cir. 2022).  The Court will therefore consult the state court's pre-removal docket in this case to determine when Plaintiff served Defendant.  *See* Docket.

That docket reflects that Plaintiff didn't serve Defendant until April 11, 2022—after its January 29, 2022 and January 30, 2022 limitations deadlines expired.  *Id.*  Defendant has therefore "demonstrate[d] that service occurred after the limitations deadline," so the burden now shifts to Plaintiff "to explain the delay."  *See Proulx*, 235 S.W.3d at 215 (cleaned up).

**6.       Plaintiff Hasn't Met its Burden to Show Due Diligence**

In its Response to Defendant's Motion, Plaintiff offered no excuse for its failure to serve Defendant within the limitations period.  *See* Resp. at 2–4.  "[I]f the plaintiff offers no excuse for

his failure to procure service" before the limitations period expired, a "lack of due diligence may be found as a matter of law." *Saenz*, 951 F.2d at 667.

The state court docket—which, again, is a proper subject for judicial notice that the Court may consider in a Rule 12(b)(6) posture—further evinces a lack of diligence. Plaintiff filed its lawsuit on November 2, 2021—before the statute of limitations expired. *See* Docket. The docket reflects, however, Plaintiff took no other action in the case until April 1, 2022, when it finally asked the clerk to issue a citation and deliver it to Defendant. *See id.* Plaintiff offers no explanation or excuse for that five-month period of inactivity. *See* Resp. at 2–4; *see also, e.g.*, *Waggoner*, 401 S.W.3d at 406 ("Texas courts have consistently held that unexplained delays of five and six months in procuring issuance and service of citation constitute a lack of due diligence as a matter of law.").

In that respect, this case is like *Plantation Production Properties, L.L.C. v. Meeks*. The plaintiff there filed suit on May 29, 1999, shortly before the statute of limitations expired on July 15, 1999. 2004 WL 2005445, at *6. However, the plaintiff did not ask the clerk to issue citations for the defendants until September 10, 1999. *Id.* The plaintiff "offer[ed] no explanation as to why he did not request issuance of citations during the nearly two months immediately following the running of the statute of limitations." *Id.* "[B]ecause any unexplained extended periods of time in which no attempt at service of process is made constitutes a lack of due diligence as a matter of law," the Tenth Court of Appeals, Waco, Texas concluded that the plaintiff failed to "exercise[] due diligence in serving process," and that his claim was therefore "barred by the statute of limitations." *Id.* at *6–7.

Plaintiff here was even more lackadaisical than the plaintiff in *Plantation Production Properties*. Whereas the plaintiff there didn't ask the clerk to issue citations for 3½ months after

filing suit, Plaintiff here didn't ask the clerk to issue citations for nearly *5* months after filing

suit.  Moreover, neither the plaintiff in *Plantation Production Properties* nor Plaintiff here asked

the clerk to issue citations for approximately two months after the limitations period expired.

Thus, just as the plaintiff in *Plantation Production Properties* failed to exercise due diligence, so

did Plaintiff.  *See also, e.g.*, *Green*, 2001 WL 878106, at *3 ("[A]n unexplained three-month

delay in obtaining issuance of citation constitutes a lack of diligence as a matter of law.").

Federal courts have likewise dismissed litigants' claims under Rule 12(b)(6) in similar

circumstances.  In *Barco v. Alpine Silica, LLC*, for example, the plaintiff did not ask the clerk of

court to issue a summons until "more than three months after [he] filed suit and . . . more than

three months after limitations expired."  2023 WL 2541980, at *3.  Because the plaintiff "failed

to provide an explanation as to why summons was not effected within a reasonable time," the

court dismissed the plaintiff's claims under Rule 12(b)(6).  *Id.* at *1, *3.

Similarly, Plaintiff hasn't provided any explanation for why it failed to ask the clerk to

issue a citation until after its suit had been pending for 5 months, several months after the

applicable limitations periods expired.  The Court will likewise dismiss Plaintiff's claims as

time-barred under Rule 12(b)(6).

### 7.      Plaintiff's Pre-Suit Activities Don't Excuse its Failure to Exercise Due Diligence

Plaintiff insists that the Court should not dismiss the case because "Defendant was sent a

Letter or [sic] Representation on 2/12/21 and a Notice of Loss and Demand on 11/1/21[,] so

Defendant had knowledge for over a year that this matter was heading to litigation and had been

active in preparing for same."  Resp. at 4.  Under Texas law, however, the mere fact that a

defendant knows that a plaintiff has filed suit does not relieve that plaintiff of the obligation to

formally serve the defendant with process.  *See, e.g.*, *Wilson v. Dunn*, 800 S.W.2d 833, 837 (Tex.

1990).  Thus, even assuming that "Defendant had knowledge for over a year that this matter was heading to litigation," that does not excuse Plaintiff's failure to exercise due diligence in effecting formal service.  *Contra* Resp. at 4.

## C.    The Court Denies Plaintiff Leave to Amend

Ordinarily, when granting a Rule 12(b)(6) motion, courts must freely grant plaintiffs leave to amend the complaint instead of dismissing the case entirely.  *See, e.g.*, *Doe v. Baylor Univ.*, 313 F. Supp. 3d 786, 793 (W.D. Tex. 2018).  However, a district court may "refuse leave to amend if the filing of the amended complaint would be futile, *i.e.*, 'if the complaint as amended would be subject to dismissal.'"  *Varela v. Gonzales*, 773 F.3d 704, 707 (5th Cir. 2014) (quoting *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 208 (5th Cir. 2009)).

Allowing Plaintiff to amend its pleadings again would be futile, as new factual allegations bearing on Defendant's liability would not change the fact that Plaintiff failed to exercise due diligence in serving Defendant.  *See, e.g.*, *Newby v. Enron Corp.*, 542 F.3d 463, 469 (5th Cir. 2008) ("[A] court need not grant leave to amend when the filing would be futile because the proposed claims are time-barred.").  The Court therefore denies Plaintiff leave to amend.

## III.    CONCLUSION

The Court therefore **GRANTS** "Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint" (ECF No. 27).

The Court **DENIES** Plaintiff leave to further amend its pleadings.

The Court will separately issue a final judgment **DISMISSING** this case **WITH PREJUDICE**.

So ORDERED and SIGNED this 10th day of April 2023.

_____
**DAVID C. GUADERRAMA**
**UNITED STATES DISTRICT JUDGE**